# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00095-CV

### S. Merlin McAnelly, Appellant

### v.

### Brady Medical Clinic, P.A.; Lonnie Lee Vickers; James H. Allen, Jr.; and Pedro Castro, Appellees

### FROM THE DISTRICT COURT OF MCCULLOCH COUNTY, 198TH JUDICIAL DISTRICT NO. 2002134, HONORABLE EMIL KARL PROHL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Dr. S. Merlin McAnelly challenges the trial court's judgment *non obstante veredicto* (JNOV) in favor of appellees Brady Medical Clinic, Lonnie Vickers, James Allen, and Pedro Castro (collectively, Brady Medical Clinic). Dr. McAnelly sued to enforce a verbal agreement that he allegedly made with Brady Medical Clinic. Dr. McAnelly contended that Brady Medical Clinic promised to pay him $25,000 in exchange for some medical supplies and his promise not to compete with the clinic's medical practice for two years. Alternatively, he sought damages on promissory estoppel and quantum meruit grounds. Because the promise not to compete alleged by McAnelly was unenforceable under Texas law, we affirm the trial court's judgment with regard to enforcement of the non-compete agreement and the promissory estoppel claim. We reverse and

render judgment with respect to Dr. McAnelly's quantum meruit claim for medical supplies given to Brady Medical Clinic and remand to the trial court for a determination of attorney's fees.

## BACKGROUND

Dr. McAnelly practiced medicine as a family doctor in Brady, Texas, for over 35 years. At the time of his retirement, Dr. McAnelly was practicing with Dr. Castro in a clinic owned by West Texas Medical Associates (WTMA). Drs. McAnelly and Castro were employees of WTMA which paid them a salary based on the revenue each doctor generated, less the operating expenses of the clinic. WTMA decided it would close its clinic in Brady when Dr. McAnelly announced his retirement.

Brady Medical Clinic decided to open a new clinic in the same space. It purchased the building which housed the clinic and WTMA donated some of its equipment. Brady Medical Clinic also negotiated with Dr. McAnelly prior to his retirement regarding details of the transition. These negotiations and the terms of any agreement between Dr. McAnelly and Brady Medical Clinic form the basis of the dispute. Dr. McAnelly alleged that in a verbal agreement Brady Medical Clinic promised to pay him $25,000 in exchange for his promise not to compete and for some medical supplies remaining in the clinic. Brady Medical Clinic contended that they attempted to negotiate a price they would pay Dr. McAnelly for his goodwill and the remaining supplies, but the parties never could agree on the terms.

Dr. McAnelly retired from his medical practice on December 31, 2001, and Brady Medical Clinic opened its doors January 1, 2002. Dr. McAnelly wrote a letter to his patients announcing his retirement and informing them that Brady Medical Clinic would assume his practice.

2

Brady Medical Clinic did not pay Dr. McAnelly any money and Dr. McAnelly did not recommend Brady Medical Clinic to his patients. Dr. McAnelly subsequently brought suit against Brady Medical Clinic seeking the $25,000 he alleged was promised in exchange for his agreement not to compete and his share of the medical supplies. The case was tried before a jury and the jury found in favor of Dr. McAnelly in all respects. The trial court, however, granted Brady Medical Clinic's motion for JNOV and denied all relief sought by Dr. McAnelly. This appeal followed.

## DISCUSSION

### Standard of Review

A JNOV is appropriate when the evidence is conclusive and when one party is entitled to judgment as a matter of law. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227-28 (Tex. 1990); *Trinity Indus., Inc. v. Ashland, Inc*, 53 S.W.3d 852, 863 (Tex. App.—Austin 2001, pet. denied). We review the denial of a motion for JNOV under a legal sufficiency or no evidence standard of review. *Trinity Indus.*, 53 S.W.3d at 863. That is, we review the evidence in the light most favorable to the jury findings, considering only the evidence and inferences that support them and disregarding all evidence and inferences to the contrary. *Id*. We will reverse a JNOV if there is more than a scintilla of evidence to support the jury's finding. *See Mancorp*, 802 S.W.2d at 228.

### Enforcement of the Contract

In his first issue, Dr. McAnelly contends that the trial court's JNOV was improper because he had an enforceable agreement to receive $25,000 in exchange for contributing certain medical supplies to Brady Medical Clinic and promising not to compete with its doctors for two

3

years. A covenant not to compete is a disfavored contract in restraint of trade and will not be enforced unless it meets certain statutory requirements. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 124 S.W.3d 678, 684 (Tex. App.—Austin 2003, pet. granted); *see* Tex. Bus. & Com. Code Ann. § 15.50 (West 2002). The enforceability of a covenant not to compete is a question of law. *Light v. Centel Cellular Co. of Texas*, 883 S.W.2d 642, 644 (Tex. 1994); *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 459 (Tex. App.—Austin 2004, no pet. h.). Generally, there are two criteria for the enforceability of a covenant not to compete under section 15.50: the covenant must (1) be ancillary to or part of an otherwise enforceable agreement at the time the agreement is made, and (2) contain limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee. *Light*, 883 S.W.2d at 644; *see* Tex. Bus. & Com. Code Ann. § 15.50(a). The statute provides additional requirements for a covenant not to compete involving a licensed physician. *See* Tex. Bus. & Com. Code Ann. § 15.50(b).

The parties disputed the terms of the alleged agreement and whether the parties to the alleged oral agreement anticipated that they would be bound despite the fact that other terms would have to be agreed upon later. However, even assuming that the agreement was made as Dr. McAnelly alleges, it would be unenforceable under section 15.50 because the agreement not to compete was not "ancillary to an otherwise enforceable agreement." *See Light*, 883 S.W.2d at 644. In order for a covenant not to compete to be ancillary to an otherwise enforceable agreement it must be designed to enforce a contractual obligation of one of the parties. *Id*. at 647 (citing *Business Elecs. v. Sharp Elecs.*, 485 U.S. 717, 738-39 (1988)); *Trilogy*, 143 S.W.3d at 462. "The otherwise

4

enforceable agreement must give rise to the 'interest worthy of protection' by the covenant not to compete." *Light*, 883 S.W.2d at 644. "Examples of legitimate, protectable interests include business goodwill, trade secrets, and other confidential or proprietary information." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 682 (Tex. 1990); *see Trilogy*, 143 S.W.3d at 462.

Here, the only otherwise enforceable agreement Dr. McAnelly contends was made was the purchase of his remaining medical supplies. An agreement not to compete is wholly unrelated to the purchase of medical supplies, and such a transaction is not an interest worthy of protecting through a restraint of trade. *See Light*, 883 S.W.2d at 647; *DeSantis*, 793 S.W.2d at 682; *Trilogy*, 143 S.W.3d at 462. Because we hold that the agreement Dr. McAnelly seeks to enforce was an unenforceable restraint on trade, we overrule his first issue.

**Promissory Estoppel**

In the absence of an enforceable covenant not to compete, Dr. McAnelly contends that he was entitled to recover $25,000 under a promissory estoppel theory. Promissory estoppel is a cause of action available to a promisee who has acted to his detriment in reasonable reliance on an otherwise unenforceable promise. *See Wheeler v. White*, 398 S.W.2d 93, 97 (Tex. 1965); *Bailey v. City of Austin*, 972 S.W.2d 180, 193 (Tex. App.—Austin 1998, pet. denied). An otherwise unenforceable promise may be binding if the promisor should reasonably expect that the promise will induce action or forbearance, the promisee substantially relies on the promise to his detriment, and enforcement of the promise is necessary to avoid an injustice. *Bailey*, 972 S.W.2d at 192. Although Dr. McAnelly's testimony provides some evidence that there was a promise not to compete and that he relied on that promise by refraining from practicing medicine part time, there is no

5

evidence that Dr. McAnelly's reliance was foreseeable. *See English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1984) (elements of promissory estoppel include (1) promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment). Dr. McAnelly consistently stated during negotiations with Brady Medical Clinic that he intended to retire from the practice of medicine. There is nothing in the record which indicates that Dr. McAnelly planned to open a part-time practice after his retirement from WTMA and that he gave up that plan based upon any promise made by Brady Medical Clinic. Furthermore, Dr. McAnelly testified that Dr. Allen of Brady Medical Clinic informed him that the clinic would not pay him the $25,000 without a signed contract. The mere fact that Dr. McAnelly relied on an unenforceable agreement that Brady Medical Clinic had repudiated does not make his actions foreseeable. We also cannot conclude that the enforcement of an agreement which is essentially a naked restraint of trade is necessary to avoid injustice. *See Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 434 (Tex. App.—Dallas 2004, pet. denied) (naked restraint of trade against public policy). We therefore overrule Dr. McAnelly's second issue that he is entitled to recover under a promissory estoppel theory.

**Quantum Meruit**

In his third issue, Dr. McAnelly contends that the trial court erred by granting JNOV on his claim for recovery in quantum meruit for the value of the medical supplies conveyed to Brady Medical Clinic. Quantum meruit is an equitable remedy which does not arise out of a contract but is independent of it. *Vortt Exploration v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990); *Colbert v. Dallas Joint Stock Land Bank*, 102 S.W.2d 1031, 1034 (Tex. 1937). Generally, a party

may recover under quantum meruit only when there is no express contract covering the services or materials furnished and when non-payment for the services or materials rendered would result in an unjust enrichment to the party benefitted. *Vortt Exploration*, 787 S.W.2d at 944. The remedy is based upon the promise implied by law to pay for materials furnished or services rendered and knowingly accepted. *Id*. To recover under quantum meruit a claimant must prove that:

(1)  valuable services were rendered or materials furnished;

(2)  for the person sought to be charged;

(3)  which services and materials were accepted by the person sought to be charged, and used or enjoyed by him;

(4)  under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

*Id*.

Here there is evidence in the record supporting each element of quantum meruit. Dr. McAnelly, Dr. Castro, and WTMA administrator Tommy McMahon all testified that Dr. McAnelly had an ownership interest in the remaining WTMA medical supplies because the cost of his share of the supplies had been regularly deducted from his paycheck. It is also undisputed that Dr. McAnelly sought payment from Brady Medical Clinic for the supplies as part of the agreement. Brady Medical Clinic does not deny that they took possession of the supplies and used them. An inventory of the supplies was taken and their value estimated. The jury concluded that Dr. McAnelly was entitled to $2400 compensation for his share of the medical supplies accepted by Brady Medical Clinic.

7

Viewing the record as a whole, there was more than a scintilla of evidence supporting the jury's verdict awarding Dr. McAnelly $2400 in quantum meruit for the medical supplies provided to Brady Medical Clinic. We therefore reverse the trial court's take nothing judgment regarding the quantum meruit claim and render judgment upon the verdict in favor of Dr. McAnelly in the amount of $2400.

**Attorney's Fees**

Dr. McAnelly also challenges the trial court's JNOV on his claim for attorney's fees. Dr. McAnelly prevailed on his quantum meruit claim but did not prevail on his contract and promissory estoppel claims. Because we render judgment in favor of Dr. McAnelly on his quantum meruit claim, he is entitled to some attorney's fees. *See Young v. Neatherlin*, 102 S.W.3d 415, 421-22 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Exxon Corp. v. Breezevale, Ltd.*, 82 S.W.3d 429, 442 (Tex. App.—Dallas 2003, pet. denied); *City of Denton v. Mun. Admin. Servs., Inc.*, 59 S.W.3d 764, 772 (Tex. App.—Fort Worth 2001, no pet.). When a party seeks to recover attorney's fees in a case involving multiple claims, one of which he prevailed on and one of which he did not, the party must offer evidence segregating attorney's fees among the various claims. *Beard Family Partnership v. Commercial Indem.*, 116 S.W.3d 839, 850 (Tex. App.—Austin 2003, no pet.); *see also Houston Livestock Show & Rodeo, Inc. v. Hamrick*, 125 S.W.3d 555, 585 (Tex. App.—Austin 2003, no pet.). *But see Gorman v. Countrywood Property Owners Ass'n*, 1 S.W.3d 915, 918 (Tex. App.—Beaumont 1999, pet. denied); *Aetna Cas. & Sur. v. Wild*, 944 S.W.2d 37, 41 (Tex. App.—Amarillo 1997, writ denied).

8

Dr. McAnelly's attorney testified at trial that the issues raised were "inextricably intertwined" and that segregation was impossible. An exception to the duty to segregate arises when the attorney's fees are in connection with claims arising out of the same transaction and are so interrelated that their prosecution entails proof of essentially the same facts. *Stewart Title Gaur. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991); *Hamrick*, 125 S.W.3d at 585. Whether fees can be segregated between various claims is a question for the court. *Hamrick*, 125 S.W.3d at 585. Contrary to the testimony of Dr. McAnelly's attorney, we find that the proof necessary for the prosecution of McAnelly's quantum meruit claim differs substantially from that required to prove his contract and promissory estoppel claims. The majority of the evidence in the record is devoted to whether the alleged agreement was for Dr. McAnelly's goodwill or a covenant not to compete. The issues related to the ownership, transfer, and value of the medical supplies were relatively undisputed and had little to do with the negotiations of the parties. We therefore conclude that the attorney's fees are capable of segregation and that Dr. McAnelly is only entitled to those fees attributable to the prosecution of his quantum meruit claim. *See Sterling*, 822 S.W.2d at 11-12.

Here, the jury found that Dr. McAnelly's attorney's fees were $32,000 for preparation and trial on all claims and $5000 each in the event of an appeal to this court and the supreme court. Among the factors considered by the jury in determining a reasonable award of attorneys fees was "the amount involved and the results obtained." The jury was not asked to segregate the attorney's fees. The determination of reasonable attorney's fees is a question for the trier of fact. *Sterling*, 822 S.W.2d at 12. Because there has been no determination of the reasonable attorney's fees attributable

to the quantum meruit claim, we remand the issue of attorney's fees to the trial court for further consideration consistent with this opinion.

## CONCLUSION

We affirm the trial court's judgment denying Dr. McAnelly's contract and promissory estoppel claims, we reverse and render judgment in the amount of $2400 on Dr. McAnelly's quantum meruit claim, and we remand the issue of attorney's fees to the trial court for further consideration consistent with this opinion.

_____

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed in Part; Reversed and Rendered in Part; Reversed and Remanded in Part

Filed:   November 12, 2004

10